*Court Of Appeals*
*Fourth Court of Appeals District of Texas*
*San Antonio*





★ ★ ★　　　　　★ ★ ★

# MEMORANDUM OPINION

No. 04-07-00599-CR

Juan Manuel **VILLANUEVA**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 63rd Judicial District Court, Val Verde County, Texas
Trial Court No. 9975-CR
Honorable Thomas F. Lee, Judge Presiding

Opinion by:　Alma L. López, Chief Justice

Sitting:　　Alma L. López, Chief Justice
　　　　　　Sandee Bryan Marion, Justice
　　　　　　Rebecca Simmons, Justice

Delivered and Filed:　August 6, 2008

AFFIRMED AS MODIFIED

Juan Manuel Villanueva pled *nolo contendere* to a charge of aggravated sexual assault of a

child. The trial judge accepted Villanueva's plea and sentenced him to thirteen years' imprisonment.

Villanueva contends the trial court erred by accepting his plea and failing to grant a new trial when

the evidence was insufficient to support his conviction, evidence was introduced that cast doubt on

his guilt, and his trial counsel provided ineffective assistance. Villanueva also contends the trial

court erred by failing to admonish him that he must register as a sexual offender. We affirm the judgment of the trial court as modified.

## BACKGROUND

Villanueva, an elementary school coach, and his wife looked after children in their home. Villanueva often took the children to the movies and would attend "pee-wee" sports events to watch the children play. One day, Villanueva called seven-year old A.V.'s mother at work to ask if he could take A.V. to the movies with some other children. A.V.'s mother said A.V. could go if she wanted to but was surprised to hear Villanueva state that A.V. was crying because she was afraid to ask. When A.V. came home from the movies, she went to her father crying. When A.V.'s father asked what was wrong, A.V. told him Villanueva had rubbed her vagina with his hand while they were alone at the movies. When asked if Villanueva had put anything in her vagina, A.V. answered Villanueva had used his hand and sometimes it would hurt her. A.V.'s father reported the incident to the police who took A.V. to be examined by a SANE nurse, who is a sexual assault specialist, in San Antonio. The SANE nurse reported A.V.'s vagina had a general redness but no trauma. The SANE nurse also reported the contact at the movies was over A.V.'s clothing. Subsequently, Villanueva was questioned by the police and gave a statement admitting that he had touched the vaginas of A.V. and another girl. He also stated that as to A.V. "I may have penetrated slightly not deep." Villanueva was indicted for aggravated sexual assault of a child and indecency with a child. The State withdrew the indecency charge, and Villanueva pled *nolo contendere* in an open plea to the aggravated sexual assault charge. After admonishing Villanueva about his rights and his waiver of them, the trial court accepted the plea and the stipulated evidence, and sentenced Villanueva to thirteen years in prison.

**STANDARD OF REVIEW**

We review a trial court's ruling on a motion for new trial for an abuse of discretion. *Lewis v. State*, 911 S.W.2d 1, 7 (Tex. Crim. App. 1995). An abuse of discretion occurs when the trial court acts arbitrarily or unreasonably, without reference to guiding rules or principles. *Montgomery v. State*, 810 S.W.2d 372, 380 (Tex. Crim. App. 1990). When considering a motion for new trial, the trial court assesses the credibility of the witnesses and may accept or reject any or all of the testimony given by a witness. *Hoyos v. State*, 951 S.W.2d 503, 511 (Tex. App.—Houston [14th Dist.] 1997), *aff'd*, 982 S.W.2d 419 (Tex. Crim. App. 1998). Accordingly, we may not substitute our judgment for that of the trial court. *Id.*

**FAILURE TO GRANT A NEW TRIAL**

Villanueva contends the trial court abused its discretion by failing to grant a new trial because: (1) the evidence presented to the trial court was insufficient to support Villanueva's plea of *nolo contendere* or his conviction for aggravated sexual assault; (2) the evidence presented during the proceedings cast doubt on Villanueva's guilt; and (3) Villanueva received ineffective assistance of trial counsel.

**I.**

When a defendant is convicted following a voluntary plea of *nolo contendere* to the court, we review the sufficiency of the evidence under a "sufficient evidence" standard. TEX. CODE CRIM. PROC. ANN. art. 1.15 (Vernon 2005); *Stone v. State*, 919 S.W.2d 424, 426 (Tex. Crim. App. 1996). A plea of *nolo contendere* or no contest has the same effect as a guilty plea vís-a-vís the criminal prosecution of a defendant. TEX. CODE CRIM. PROC. ANN. art. 27.02(5) (Vernon 2006); *Brewster v. State*, 606 S.W.2d 325, 329 (Tex. Crim. App. 1980). A plea of guilty before the court in a felony

case constitutes an admission of guilt but does not authorize a conviction. *Cooper v. State*, 537 S.W.2d 940, 943 (Tex. Crim. App. 1976). The State is required to introduce supporting evidence establishing the defendant's guilt, and then the trial court must consider the evidence and accept it as the basis for its judgment. TEX. CODE CRIM. PROC. ANN. art. 1.15 (Vernon 2005). Supporting evidence may be offered through a written stipulation by the defendant when accompanied by a written consent and waiver and supported by affidavits, written statements of witnesses, or other documentary evidence. *Valdez v. State*, 555 S.W.2d 463, 464 (Tex. Crim. App. 1977). Although a defendant pleading no contest is not required to admit the truth of the stipulated evidence, doing so makes the stipulation a judicial confession. *Stone*, 919 S.W.2d at 426 (citing *Waage v. State*, 456 S.W.2d 388, 389 (Tex. Crim. App. 1970)).

At the plea hearing, Villanueva was admonished by the court and entered a plea of no contest. Villanueva stated in open court that he understood that, for the purposes of the criminal proceeding, a no contest plea has the same effect as a guilty plea. Villanueva testified that he freely and voluntarily entered the plea and that no one had threatened him or promised him anything to cause him to plead no contest. The trial judge then considered the State's evidence in support of Villanueva's guilt: (1) Villanueva's stipulated testimony and waivers; (2) Villanueva's waiver of rights prior to his oral and written statement; (3) Villanueva's handwritten statement; (4) a typed transcript of Villanueva's statement; (5) the police incident report including the outcry witness's statement and medical report; and (6) the police interview with A.V. The State's evidence included: a signed written waiver of Villanueva's right to a jury trial; a signed agreement to stipulate to testimony that would be the same as the witnesses would give if they were present in open court including a waiver of Villanueva's confrontation rights; and a signed stipulation of his own

testimony stating the facts therein were true and correct. Because Villanueva stipulated his own testimony, which "embrace[d] every essential element of the offense" of aggravated sexual assault of a child sufficient to establish his guilt, and stipulated that the facts were true and correct, he made a judicial confession as a matter of law, despite the fact he modified the stipulation form by crossing out the words "judicially confess." *See Wright v. State*, 930 S.W.2d 131, 132 (Tex. App.—Dallas 1996, no pet.) (indicating the State's evidence must "embrace[] every essential element of the offense charged" when a defendant pleads no contest); *see also Stone*, 919 S.W.2d at 426. Villanueva's judicial confession meets the requirements of article 1.15 and alone is sufficient to support Villanueva's plea of no contest and the trial court's finding of guilt. *See Wright*, 930 S.W.2d at 133; *see also Dinnery v. State*, 592 S.W.2d 343, 353 (Tex. Crim. App. 1979) (op. on motion for reh'g). Because the evidence is sufficient to support Villanueva's plea and his conviction for aggravated sexual assault, the trial court did not abuse its discretion in denying the motion for new trial on this ground.

## II.

To establish an abuse of discretion for denying a motion for new trial based on newly discovered evidence, the appellant must show: (1) the evidence was unknown or unavailable to him before trial; (2) his failure to discover the evidence was not due to a lack of diligence; (3) the new evidence is admissible and not merely cumulative, corroborative, collateral, or impeaching; and (4) the new evidence is probably true and its materiality will probably result in a different outcome following a new trial. *Keeter v. State*, 74 S.W.3d 31, 36-37 (Tex. Crim. App. 2002); *Shafer v. State*, 82 S.W.3d 553, 556 (Tex. App.—San Antonio 2002, pet. ref'd). If the appellant fails to establish

any one of these elements, the trial court does not abuse its discretion by denying the motion for new trial. *Shafer*, 82 S.W.3d at 556.

Having previously determined that the evidence was sufficient and Villanueva did judicially confess, we evaluate whether Villanueva met the four requirements for newly discovered evidence. No witnesses were called to testify at the plea hearing or the sentencing hearing. At the sentencing hearing, Villanueva indicated for the first time that his statement to the police was false. Villanueva did not testify at the hearing on the motion for new trial but submitted an affidavit stating that "my attorney informed me that the only way that I would get probation [was] if I pled 'no contest.'" Villanueva's affidavit did not mention any exculpatory witnesses or other new evidence; however, a niece, two daughters, and a close personal friend testified at the hearing on the motion for new trial.

Yanita Escareno, Villanueva's niece, testified that she and her sister-in-law saw Villanueva at the movie with A.V., that he sat on the row in front of her, that he sometimes leaned away from A.V. and appeared to be sleeping, and that she was watching the movie and not his hands. Yanita also testified that, although the theater was dark and the theater chairs were made of an opaque material, she would have known if Villanueva had improperly touched A.V. Yanita testified that she tried to talk to Villanueva's trial counsel on the day of the plea hearing to tell him that she and her sister-in-law were eyewitnesses, but Villanueva's counsel did not talk to her.

Villanueva's daughters, Soveida and Yesenia, who were not witnesses but heard that Yanita was at the movies on the day of the alleged assault, testified that they also tried to talk to Villanueva's trial counsel before trial and at the plea hearing to tell him that there were eyewitnesses. Yanita testified that Villanueva knew she and her sister-in-law would testify on Villanueva's behalf before the plea hearing. Villanueva would have known, therefore, that they could have provided

exculpatory testimony at the time of the plea hearing. In addition, he would have known his own testimony would have cast doubt on his guilt at the time of the plea hearing. Consequently, Villanueva's evidence fails the first prong of the test. Moreover, the eyewitnesses were present at the plea hearing yet Villanueva did not mention anything to the judge about being innocent or having witnesses at the plea hearing who could prove his innocence. In fact, Villanueva stipulated to the evidence and judicially confessed that he did "intentionally and knowingly sexually assault A.V. by causing [his] finger to penetrate the female sexual organ of A.V." It is within the trial court's discretion to believe or disbelieve the new evidence and Villanueva's recantation. *Keeter*, 74 S.W.3d at 37; *Hoyos*, 951 S.W.2d at 511. The trial judge did not abuse his discretion, therefore, by denying the motion for new trial based on the ground of newly discovered evidence.

## III.

In addition to his motion for new trial on grounds of insufficient evidence and newly discovered evidence, Villanueva also claims the trial judge erred by failing to grant him a new trial on grounds of ineffective assistance of counsel. The standard of review for evaluating claims of ineffective assistance of trial counsel is set forth in *Strickland v. Washington*, 466 U.S. 668, 687-88, 692 (1984). To prove ineffective assistance of counsel on appeal, an appellant must show: (1) counsel's assistance fell below an objective professional standard; and (2) counsel's actions thereby prejudiced appellant's defense. *Id.*; *Thompson v. State*, 9 S.W.3d 808, 812 (Tex. Crim. App. 1999). Appellant must prove, by a preponderance of the evidence that, but for counsel's error, there is a reasonable probability the outcome of his trial would have been different. *Jackson v. State*, 973 S.W.2d 954, 956 (Tex. Crim. App. 1998). A "reasonable probability" is a "probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. In reviewing an ineffective

assistance of counsel claim, we consider the totality of counsel's representation in light of the particular circumstances of the case and presume that counsel acted competently and made decisions based on a reasonable trial strategy. *See Ex parte Welborn*, 785 S.W.2d 391, 393 (Tex. Crim. App. 1990). To rebut this presumption, the basis for any allegation of ineffectiveness must be affirmatively founded in the record. *Thompson*, 9 S.W.3d at 813. Even if the appellant is able to prove trial counsel's performance was deficient, the appellant must also affirmatively prove that he was prejudiced by counsel's actions. *Id.* at 812. The appellant must demonstrate a reasonable probability that the result of the proceeding would have been different if trial counsel had acted professionally. *Id.* Where a "motion for new trial alleges ineffective assistance of counsel, we must determine whether the trial court's determination of the ineffective assistance claim and denial of the motion for new trial were clearly wrong and outside the zone of reasonable disagreement." *Sanchez v. State*, 243 S.W.3d 57, 63 (Tex. App.—Houston [1st Dist.] 2007, pet. ref'd).

### A.      Promise of Community Supervision

Villanueva argues his trial counsel was ineffective for telling Villanueva he would receive community supervision if he pled no contest. Villanueva's affidavit, attached to his motion for new trial, states "my attorney informed me that the only way that I would get probation [was] if I pled 'no contest' to the charges. He also told me that if I went to trial and lost the case, that I would go to prison." The testimony of Villanueva's daughters at the hearing on the motion for new trial and the affidavits provided by them and Arlene Reyna, also attached to the motion for new trial, support Villanueva's claim that trial counsel told Villanueva he would receive community supervision if he pled no contest.

In this case, we can ascertain whether Villanueva's plea was voluntary or involuntary from the record. *See Hernandez v. State*, 84 S.W.3d 26, 33 (Tex. App.—Texarkana 2002, pet. ref'd). At the plea hearing, Villanueva stated in open court, and in documents submitted to the court, that he stipulated to the elements of the offense for which he was charged, that he was aware that the legal effect of his plea was the same as that of a guilty plea, that it was an open plea without an agreed recommendation as to punishment, and that the trial court could consider the full range of punishment authorized by law. Villanueva further acknowledged that his plea of no contest was not the result of threats, violence, or promises, and that he was "totally satisfied" with his trial counsel's representation.

"An attestation of voluntariness at the plea hearing creates a heavy burden for the appellant to show involuntariness at a subsequent hearing." *Id.* In *Messer v. State*,[1] Messer's trial counsel erroneously advised Messer he would receive community supervision if he pled no contest. Messer entered an open plea of no contest testifying he was entering the plea voluntarily, he understood the range of possible punishment, and no one had "forced, threatened, or coerced" him regarding his plea. At the hearing on his motion for new trial, Messer testified he pled no contest because his trial counsel advised him he would get community supervision. Even though Messer's trial counsel admitted her mistake, the court of appeals held:

> The statements made to appellant by his defense counsel about the punishment he might expect if he pleaded no contest simply constituted counsel's predictions, albeit erroneous ones, about the logical outcome of certain trial strategy. In view of the clear admonitions given by the trial court before the plea, which both the appellant and his counsel admit they understood, appellant cannot credibly contend that his plea was involuntary and that he was denied effective assistance of counsel.

---

[1] 757 S.W.2d 820 (Tex. App.—Houston [1st Dist.] 1988, pet. ref'd).

*Messer v. State*, 757 S.W.2d 820, 826 (Tex. App.—Houston [1st Dist.] 1988, pet. ref'd) (citing

*Wellnitz v. Page*, 420 F.2d 935 (10th Cir.1970)).

In the instant case, Villanueva does not contend he failed to understand the admonitions he

was given. Villanueva's trial counsel, J.B. Williamson, denied telling Villanueva that he would

definitely receive community supervision if he pled no contest. At the hearing on the motion for new

trial, Williamson, testified that:

> I told [Villanueva] I thought that since [his] confessions were coming in about the numerous molestations of the little girls, that there was a very good chance that a jury would find him guilty and a high sentence [(30 to 40 years)] would be extremely possible. He didn't want to go to prison. I told him I understood, and the only way that I felt in my opinion there would be some consideration for something other than prison time would be to go to the court on a plea of no contest and hope that the judge would consider [it] as far as adjudication. [I] [m]ade it quite clear that I didn't know what would happen, just like he didn't know, but I felt like that was the only way that he would get a consideration of something other than a prison sentence.

Williamson further testified that he explained to Villanueva that the offense was a "3(g) offense,"

meaning only a jury could consider regular community supervision and the judge could consider only

deferred adjudication community supervision or prison. Villanueva told Williamson "he didn't want

to go through a jury trial. He didn't want to put his family through a jury trial." After a one and a

half hour meeting with Villanueva and his family, Villanueva told Williamson "he was going to put

it in God's hands, and he wanted to do the no contest plea before the judge." When asked directly

if he had ever told Villanueva "that if he entered any kind of plea that he would receive probation,"

Williamson answered "[a]bsolutely not." Even if we accept as true Villanueva's evidence regarding

Williamson's assurances, "such assurances, albeit erroneous, cannot overcome the admissions

[Villanueva] made in open court that his plea was voluntary, with full knowledge of the court's

sentencing options." *See Hernandez*, 84 S.W.3d at 34. Furthermore, Williamson gave a reasonable explanation regarding his trial strategy for recommending a plea of no contest, and a reviewing court presumes that counsel acted competently and made decisions consistent with such a strategy. *See Ex parte Welborn*, 785 S.W.2d at 393. Because the trial judge assesses the credibility of the witnesses and may accept or reject any or all of the testimony given by a witness, *Hoyos*, 951 S.W.2d at 511, we cannot say that the trial court's rejection of the ineffective assistance claim based on a promise of community supervision was clearly wrong and outside the zone of reasonable disagreement. *See Sanchez*, 243 S.W.3d at 63.

## B.   Failure to Call Exculpatory Witnesses

Villanueva claims his trial counsel was deficient for failing to call witnesses who would have given exculpatory evidence on Villanueva's behalf. As discussed above, Yanita testified that she and her sister-in-law sat behind Villanueva and A.V. at the movies on the day of the assault. She testified that she tried to tell Williamson there were eyewitnesses on the day of the plea hearing, but Williamson did not talk to her. Yanita testified that she also told Villanueva and several family members that there were eyewitnesses, including Soveida, and Yesenia.

Soveida testified she tried to call Williamson several times over the course of the three years leading up to the trial and left messages with a secretary, but Williamson did not return the calls. Soveida admitted she did not try to take Williamson aside even though she was present at some meetings Williamson had with Villanueva, because Williamson never gave her a chance or he was always in a hurry.

Yesenia testified she called Williamson several times about the eyewitnesses and did not talk to a secretary because she always got an answering machine. Yesenia did not leave any messages

but testified she told Williamson about the eyewitnesses before the trial, and Soveida heard her tell Williamson. Villanueva, however, never mentioned that there were eyewitnesses to Williamson or to the trial court at either the plea hearing or the sentencing hearing. Although defense counsel has a duty to prepare a defense by independently investigating the facts of the case as well as the pertinent law, *Butler v. State*, 716 S.W.2d 48, 54 (Tex. Crim. App. 1986):

> [t]he reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions. Counsel's actions are usually based, quite properly, on informed strategic choices made by the defendant and on information supplied by the defendant. In particular, what investigation decisions are reasonable depends critically on such information.

*Strickland*, 466 U.S. at 691. Due to the fact Villanueva did not mention any eyewitnesses to Williamson or to the trial court, although he had the knowledge and the opportunity, and because there was conflicting evidence regarding whether or not Williamson had an opportunity to independently know that there were eyewitnesses, we cannot say that the trial court's determination that Williamson was not ineffective in failing to call exculpatory witnesses was clearly wrong and outside the zone of reasonable disagreement. *See Sanchez*, 243 S.W.3d at 63.

## C.     Failure to Advise Villanueva Regarding Sufficiency of the Evidence

Villanueva contends his trial counsel provided ineffective assistance when he failed to advise Villanueva that the evidence was insufficient and that Villanueva should not plead no contest. When Villanueva's motion to suppress his confession was denied, the stipulated evidence included Villanueva's confession which encompassed each element of the offense of aggravated sexual assault of a child. This evidence alone, if accepted by the court, was sufficient to convict Villanueva of aggravated sexual assault of a child. *See Wright*, 930 S.W.2d at 133; *see also Dinnery*, 592 S.W.2d at 353. Furthermore, Villanueva told the trial judge that he "didn't really want to go put

anybody through stress or anything else" by going to trial. Because there was sufficient evidence and Villanueva desired not to put his family through a jury trial, Williamson's explanation regarding the manner in which he counseled Villanueva demonstrates a reasonable trial strategy for achieving Villanueva's goal of avoiding both a trial and prison.

## D.      Overall Ineffective Assistance of Counsel

Villanueva contends that even if the foregoing reasons are insufficient to meet the standard for ineffective assistance of counsel, we should consider the totality of the circumstances and find Villanueva's counsel was ineffective. Villanueva lists numerous "acts and omissions" by Williamson arguing that the combination of these show Williamson failed to meet objective professional standards. Most of the items center around a failure to investigate the facts of the case by conducting proper discovery.

For example, Villanueva contends that the report of the SANE nurse established Villanueva did not penetrate A.V.'s vagina with his finger at the movies because A.V.'s history states Villanueva "touched me there but over my capris." Villanueva further argues that Williamson should have investigated such evidence more thoroughly and counseled Villanueva against a no contest plea. Although Williamson admitted he did not interview the SANE nurse to discover other possible causes of A.V.'s redness, the State notified Williamson that it would not call the SANE nurse to testify, and Williamson relied on that indication. Williamson's testimony provided a reasonable trial strategy for not interviewing the SANE nurse about her report.

Furthermore, the court of criminal appeals has held that "the interposition of a layer of fabric between a person's hand and an [organ] upon which the hand is placed" will not prevent the commission of a crime. *See Resnick v. State*, 574 S.W.2d 558, 560 (Tex. Crim. App. [Panel Op.]

1978).  As our sister court in *Rodda v. State* explained: "The offensive act is the penetration of the female sexual organ with his hand or fingers.  It does not matter whether his hand was encased in a glove or between her panties and her shorts or outside her shorts so long as his hand accomplished the penetration."  *See Rodda v. State*, 926 S.W.2d 375, 378 (Tex. App.—Fort Worth 1996, pet. ref'd).  Even though the SANE nurse indicated no penetration on the report, she was not present at the assault, and she never asked A.V. whether Villanueva penetrated her vagina and apparently reached her conclusion based on A.V.'s response that Villanueva had touched her over her capris.  Moreover, Villanueva asserted in his statement to the police: "To Amanda I may have penetrated slightly not deep."

Even if some of Williamson's acts failed to meet objective professional standards, Villanueva would still have to affirmatively prove a reasonable probability that the result of the proceedings would have been different if Williamson had acted professionally.  *See Thompson*, 9 S.W.3d at 812.  Given that Villanueva confessed to the assault and A.V. would have testified to the assault, the strength of the evidence against Villanueva supports the trial court's judgment.  Consequently, Villanueva has failed to affirmatively prove a reasonable probability that the result of the proceedings would have been different.  *See id.*  Having already addressed Williamson's acts regarding a promise of community supervision, possible exculpatory witnesses, and the sufficiency of the evidence, we conclude that the trial court's ruling on the ineffective assistance claims and its denial of the motion for new trial were within the zone of reasonable disagreement and were not an abuse of discretion.  *See Sanchez*, 243 S.W.3d at 63.

### FAILURE TO WITHDRAW PLEA OR FIND VILLANUEVA NOT GUILTY

As to Villanueva's claim that the trial judge should have withdrawn his plea and found him not guilty or guilty of a lesser offense, we disagree. In a bench trial on a plea, the trial court has a duty to consider the evidence presented and find the defendant guilty, guilty of a lesser offense, if any, or not guilty. *Hinkle v. State*, 934 S.W.2d 146, 148 (Tex. App.—San Antonio 1996, pet. ref'd). Even if there is evidence introduced which reasonably and fairly raises a doubt regarding the defendant's guilt, the trial judge has the responsibility to determine whether the plea was voluntarily and knowingly given when considering the totality of the circumstances. *Id.* at 149. A plea will not be considered "involuntary simply because the sentence exceeded what the appellant expected, even if that expectation was raised by his attorney." *Id.* (citing *Galvan v. State*, 525 S.W.2d 24, 26 (Tex. Crim. App. 1975)). The decision to sua sponte withdraw a plea of no contest is, therefore, within the trial court's discretion. *Id.* Because the trial court is the fact-finder in a bench trial, however, there "seems to be no valid reason for the court to withdraw the guilty [or no contest] plea and enter a plea of not guilty." *Id.* at 148.

At the plea hearing, the trial judge accepted Villanueva's plea of no contest after the proper admonishments and Villanueva's response of "No, sir" when asked if anyone had "promised . . . anything to get you to plead nolo contendere." Villanueva stipulated that he had sexually assaulted A.V., and he stipulated to the State's evidence which included his hand-written statement. At the sentencing hearing, Villanueva testified that he pled no contest because he "felt that [he] was accused of something that [he] didn't do, and [he] didn't really want to go put anybody through stress or anything else." Villanueva testified that his police statement was the result of his nervousness and the police detective telling him what to write. Although Villanueva claimed, in open court, that his

police statement was untrue and claimed, in his affidavit, that Williamson told him "the only way that I would get [community supervision was] if I pled 'no contest' to the charges," Villanueva never mentioned any other exculpatory evidence. Even if the evidence presented at the sentencing hearing reasonably raised a doubt as to Villanueva's guilt, the trial judge was not required to withdraw Villanueva's plea because "the trial court, as trier of fact, may find the defendant guilty of a lesser offense or not guilty despite the plea." *See id.* at 148 (citing *Moon v. State*, 572 S.W.2d 681, 682 (Tex. Crim. App. 1978) (op. on motion for reh'g)). The trial judge had the discretion to determine whether Villanueva's plea was voluntary and whether the evidence was sufficient to support such a plea. *See id.* at 149. The fact-finder is the sole judge of the facts, the credibility of the witnesses, and the weight given to their testimony. *Sharp v. State*, 707 S.W.2d 611, 614 (Tex. Crim. App. 1986). As the fact-finder, the trial judge could have reasonably chosen to believe Villanueva's stipulated testimony and statement to the police and not to believe his later recantation. *See id.* The trial judge did not abuse his discretion therefore, by failing to withdraw Villanueva's no contest plea, find him guilty of a lesser offense, or find him not guilty.

### FAILURE TO GIVE SEXUAL OFFENDER REGISTRATION ADMONISHMENT

Villanueva argues his plea was not completely voluntary because the trial judge failed to admonish Villanueva as required by Texas Code of Criminal Procedure article 26.13(a)(5) that he would have to register as a sex offender. TEX. CODE CRIM. PROC. ANN. art. 26.13 (Vernon Supp. 2007). Villanueva contends that because he was unaware of the full consequences of his plea, he would have likely changed his decision to plead no contest. Although the record establishes that the trial court erred by not giving Villanueva the admonishment regarding sexual offender registration, we review this error under a harmless error analysis. TEX. R. APP. P. 44.2(b); *Anderson v. State*, 182

S.W.3d 914, 918 (Tex. Crim. App. 2006). We consider the entire record to determine whether we have a fair assurance that the defendant would not have changed his mind had the trial court admonished him. *Id.* at 919. Upon a review of the entire record, we conclude Villanueva was otherwise properly admonished and understood the punishment range he faced by pleading no contest. Because Villanueva's confession was held to be admissible by the trial court, the State's case against Villanueva was strong, especially if corroborated by A.V.'s probable testimony. Once Villanueva knew the confession was going to be admitted, Williamson and Villanueva spent one and a half hours discussing Villanueva's options, and Villanueva decided he did not want to put his family through a jury trial. Even though he was aware and was further admonished by the trial court that he could be sentenced to prison, he chose to enter a plea of no contest. Later, during the sentencing hearing, he reiterated that his motivation for entering a plea was to avoid "put[ting] anybody through stress." Because the record reflects Villanueva was primarily motivated to enter a plea due to his desire to avoid a jury trial and his hope of community supervision, we are fairly assured no substantial rights were affected by the trial court's failure to admonish Villanueva with regard to the sexual offender registration requirement, and Villanueva would not have changed his decision to enter a no contest plea had he been so admonished by the trial court. *See id.* at 921; *see also McCoy v. State*, No. 05-05-00458-CR, 2007 WL 2325509, at *3 (Tex. App.—Dallas Aug. 13, 2007, no pet.) (not designated for publication).

## MODIFICATION OF JUDGMENT

Villanueva contends and the State concedes the judgment entered by the trial court in this matter should be modified to indicate Villanueva was convicted only of aggravated sexual assault of a child. The record reflects that the judgment erroneously indicates Villanueva was convicted of

indecency with a child even though the State withdrew the indecency with a child allegation. We therefore modify the judgment to reflect Villanueva was convicted only of aggravated sexual assault of a child. Villanueva's final issue is sustained.

## CONCLUSION

For the foregoing reasons, we modify the trial court's judgment to indicate Villanueva was convicted only of aggravated sexual assault of a child. We affirm the trial court's judgment as modified.

Alma L. López, Chief Justice

Do Not Publish